UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| I.C. ELLISON,          )<br>                              )<br>          Plaintiff,    )<br>                              )<br>     vs.                   )<br>                              )<br>STATE OF NEVADA, et al.,  )<br>                              )<br>          Defendants.  )<br>_____) | 3:04-CV-00155-PMP (RAM)<br><br>REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE |

This Report and Recommendation is made to the Honorable Philip M. Pro, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion for Summary Judgment (Doc. #63). Plaintiff opposed the motion (Doc. #72) and Defendants replied (Doc. #73). Defendants have also filed supplemental evidence in support of their motion (Docs. #80, #82) and two errata to their reply (Docs. #76, #77).

BACKGROUND

Plaintiff I.C. Ellison ("Plaintiff") was an inmate at Warm Springs Correctional Center ("WSCC"). (Doc. #11). He apparently refused to give a DNA sample at WSCC and so was transferred to Nevada State Prison ("NSP") so that a sample could be obtained. (Id.). On November 28, 2004 the court ordered that Counts I, II, IV, V and VI of Plaintiff's Civil Rights Complaint be dismissed for failure to state claim upon which relief could be granted. (Id.). The court also granted Plaintiff leave to file an Amended Complaint (Doc. #17). Plaintiff's amended complaint contained six counts alleging that nine named and unnamed Defendants violated his constitutional rights. (Id.). The court also screened that complaint and all but Count III, alleging a claim for cruel

1  and unusual punishment in violation of the Eighth Amendment, were dismissed. (Doc. #16). In
2  essence, Plaintiff claims that Defendants used excessive force against him in order to obtain a DNA
3  sample from him, (Doc. #17), which the Defendants sought to obtain pursuant to a court order.
4  (Doc. #39). This incident was videotaped and the Defendants filed a copy of it (Doc. #37) pursuant
5  to the court's order. (Doc. #36).

6        On March 15, 2005, the Defendants filed a motion to dismiss (Doc. #23), which was opposed
7  by Plaintiff (Doc. #25). The court later issued its Report and Recommendation, recommending
8  that Defendants' motion be denied and that Defendants disclose the identity of the individuals in
9  the videotape. (Doc. #43). These recommendations were adopted by Judge McKibben, (Doc. #46),
10 and Defendants then disclosed the identities of the individuals featured on the April 4, 2002
11 videotape. (Doc. #48).

12       The videotape shows the following: (1) Plaintiff resisted the taking of his thumb prints by
13 clenching his fists, (2) NSP opened Plaintiff's fists with the use of minimal force, (3) NSP staff were
14 successful in obtaining Plaintiff's thumb prints, (4) NSP staff attempted to swab Plaintiff's mouth
15 to obtain a DNA sample, (5) Plaintiff appear to bite the swab and then spit it on the ground,
16 (6)Plaintiff generally refused to cooperate or open his mouth, (7) Plaintiff was informed that if the
17 staff was unable to get the sample by mouth swab then they would have to obtain a blood sample,
18 (8) Plaintiff continued to willfully obstruct NSP staff from obtaining a mouth swab, (9) Plaintiff
19 was placed on the floor and a pillow placed behind his head, (10) a blood sample was obtained from
20 Plaintiff's arm, (11) Plaintiff did not indicate that it caused him any pain, (12) Plaintiff said "I don't
21 want to cooperate" when NSP staff explained that things could have been easier had he been
22 willing to cooperate, (13) Plaintiff removed his clothes at the request of NSP staff, (14) Plaintiff
23 was evaluated for injuries, (15) no marks were evidenced on Plaintiff's upper body, (16) Plaintiff
24 did not indicate any injury to his lower body, (17) Plaintiff complained of wrist pain and pictures
25 were taken of his wrists. (Doc. #37).

26 / / /
27 / / /
28

## DISCUSSION

A.  Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. Northwest Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); Beyene v. Coleman Sec. Serv., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant

or unnecessary will not be considered. Id. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. Id.

The court must defer to State prison officials regarding day-to-day prison operations. Turner v. Safley, 482 U.S. 78, 84-85 (1986)(holding that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform ..." and additional deference to prison authorities is due where state penal system is involved). In order to defeat summary judgment the plaintiff must demonstrate the regulations at issue are not reasonably related to legitimate penological interests. Bahrampour v. Lampert, 356 F.3d 969, 973 (9th Cir. 2004).

B.   Excessive force standard

The Eighth Amendment bans the infliction of cruel and unusual punishment on convicted persons. U.S. Const. Amend. VIII; Wilson v. Seizer, 501 U.S. 294, 296-97 (1991). States must abide by this ban under the Due Process clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666 (1962).

In cases dealing with the use of force by prison guards, the plaintiff must show that the prison guard acted with malicious and sadistic intent. Whitley v. Albert, 475 U.S. 312, 320-21 (1986)(where inmate plaintiff was shot by guard attempting to quell a prison riot). In Hudson v. Macmillan the Supreme Court held that this standard applies equally to cases involving the use of force by prison guards outside the riot context. Hudson v. Macmillan, 503 U.S. 1 (1992) (where, after an argument with the Plaintiff inmate, a prison guard kicked and punched the inmate while escorting him to a lock down area). In determining whether a prison official has used excessive force in violation of an inmates's constitutional rights, the core inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 320-21. In making that determination, the court may evaluate factors such as (1) the need for application of force, (2) the relationship

between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of a forceful response, and (5) the extent of any injuries to the inmate. Whitley, 475 U.S. at 321.

Although the extent of injuries is relevant, the plaintiff need not prove a significant injury. Hudson, 503 U.S. at 9. Thus, absence of serious injury does not end the inquiry. Id.; see also Meredith v. Arizona, 523 F.2d 481 (no lasting injury needed where guard hit inmate in solar plexus during an emphysema attack, but inmate fully recovered after four hours on oxygen). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimus uses of physical force, provided the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9-10. However, "it is not the degree of injury which makes out a violation of the eighth amendment. Rather, it is the use of official force or authority that is "intentional, unjustified, brutal and offensive to human dignity." Felix v. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991).

The analysis, however, changes where the prison guards are not faced with an exigent circumstance such as a disturbance that poses significant risks to the safety of inmates and prison staff. Johnson v. Lewis, 217 F.3d 726, 733-34 (2000). Where inmates do not pose a safety risk to prison staff, the public, or each other, and the circumstances do not require prison officials to make split-second, life and death decisions, then the inmate need not satisfy the higher malicious or sadistic standard and instead need only show deliberate indifference on part of the accused prison official. Id. at 734. The Supreme Court has stated that the deliberate indifference analysis has objective and subjective components. Wilson, 501 U.S. at 298, 302. The objective element concerns whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. Farmer v. Brennan, 511 U.S. 825 (1994). The subjective prong requires that an inmate demonstrate that prison officials acted with deliberate indifference to a substantial risk of harm to inmate health or safety. Farmer, 511 U.S. at 834 (1994); Wilson, 501 U.S. at 305.

///

///

Here, the undisputed facts, as shown by the videotape of the incident, are such that no reasonable juror could find that the NSP officials used excessive force in obtaining the DNA sample from Plaintiff. Rather, the evidence shows that Plaintiff was extremely uncooperative and that any force used by the prison officials against him was the least amount necessary to counteract his blatant refusal to comply with the court order that a DNA sample be obtained from him. Further, the evidence does not show that Plaintiff suffered any injury that is objectively harmful enough to establish a constitutional violation.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge enter an order GRANTING Defendants' Motion for Summary Judgment (Doc. #63).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)© and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: January 29, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

6